UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WORLD TRIATHLON CORPORATION,

      Plaintiff,

v.                                 Case No.  8:05-cv-659-T-24 MAP

ZEFAL, INC. and ZEFAL CORPORATION,

      Defendants.

_____/

## ORDER

This cause comes before the Court on Zefal S.A.'s Special Appearance to Request the Court to Refuse to Exercise Personal Jurisdiction.  (Doc. No. 17).  Plaintiff opposes the motion.  (Doc. No. 36).  The Court held a hearing on the motion on April 17, 2006.

## I.  Standard of Review

"When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)(citation omitted).

"The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  Id. (citation omitted).  Once the plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence.  See Mold-Ex, Inc. v. Michigan Technical Representatives, Inc., 2005 WL 2416824, at *2 (N.D. Fla. Sept. 30, 2005)(citations omitted).  If the defendant sustains its burden, the plaintiff is required to

substantiate the allegations in the complaint by affidavits or other competent evidence.  See id.

(citations omitted); Coastal Builders, Inc. v. Ficon Fabricators, Inc., 2005 WL 1005135, at *2

(S.D. Ala. April 29, 2005)(citation omitted); Kozial v. Bombardier-Rotax GmbH, 129 Fed Appx.

543, 545 (11th Cir. 2005)(citations omitted).  If the plaintiff substantiates the allegations in the

complaint by affidavits or other competent evidence, the plaintiff's evidence is to be credited,

even if it conflicts with the defendant's evidence.  See Coastal Builders, 2005 WL 1005135, at *

2 (citations omitted).

## II.  Background

Plaintiff World Triathlon Corporation alleges the following in its complaint: Plaintiff, a

Florida corporation, is in the business of organizing and promoting triathlon competitions

worldwide.  (Doc. No. 1, ¶ 1, 8).  Plaintiff is also in the business of licensing its internationally

famous IRONMAN TRIATHLON and IRONMAN marks in connection with the sale of athletic

products.  (Doc. No. 1, ¶ 8).

Defendant Zefal, Inc. ("Zefal USA") is a Texas corporation.  (Doc. No. 1, ¶ 2).

Defendant Zefal Corporation is alleged to be a corporation organized under the laws of the

Republic of France with its principal place of business in France.  (Doc. No. 1, ¶ 3).  Zefal USA

is alleged to be the wholly owned subsidiary of Zefal Corporation.  (Doc. No. 1, ¶ 4).

On or about May 5, 2003, Plaintiff and Zefal USA entered into a license agreement

wherein they agreed that Plaintiff would grant an exclusive license to Zefal USA to use

Plaintiff's IRONMAN marks on bicycle equipment on a worldwide basis.  (Doc. No. 1, ¶ 16).  In

return, Zefal USA agreed to develop, promote, and market the licensed products and pay

Plaintiff certain royalties and sponsorship fees.  (Doc. No. 1, ¶ 16).

2

Plaintiff contends that Zefal USA fell in arrears in its payment obligations to Plaintiff and failed to comply with its other obligations under the license agreement.  (Doc. No. 1, ¶ 17). Therefore, by a letter dated March 2, 2005, Plaintiff gave written notice to Zefal USA that it was terminating their license agreement.  (Doc. No. 1, ¶ 19).  However, after the termination of the license agreement, Defendants continued to market, advertise, and offer for sale products bearing the IRONMAN mark and logo on Zefal Corporation's website, www.zefal.com.  (Doc. No. 1, ¶ 29).

On April 4, 2005, Plaintiff filed suit against Defendants asserting three claims: (1) breach of license agreement against Zefal USA, (2) trademark infringement against both defendants, and (3) false designation of origin against both defendants.  In response, Zefal S.A. ("Zefal France") made a special appearance requesting that the Court refuse to exercise personal jurisdiction over it.  (Doc. No. 17).  Specifically, Zefal France states that Zefal USA is a subsidiary of Zefal France, not the incorrectly named defendant Zefal Corporation.[1]  (Doc. No. 18, p. 14, 15).  Zefal France has filed this motion to ensure that it will not be defaulted, even though it is not a named defendant in this case.

### III.  Jurisdictional Facts

Zefal France made products bearing Plaintiff's marks.  (Glotin[2] declaration, ¶ 20).  Zefal France sold these products to Zefal USA, f.o.b. France.  (Glotin declaration, ¶ 21).  Zefal France did not sell these products to any other person or entity.  (Glotin declaration, ¶ 22).

---

[1]Zefal France states that it is unaware of any entity named Zefal Corporation.  (Doc. No. 18, p. 15).

[2]Zefal France filed the declaration of Joel Glotin, the Managing Director of Zefal France, in support of its motion.  (Doc. No. 18-10).

Zefal France is the owner of the website, www.zefal.com ("the Site").  (Glotin declaration, ¶ 6).  The Site allows visitors to contact Zefal France by filling out an online form and submitting a message through the Site.  (Doc. No. 36-2, p. 21).

Products featured on the Site are not available for purchase on the Site.  (Glotin declaration, ¶ 7, 10).  Instead, the Site provides a list of distributors of Zefal France's product when the user clicks on a geographic area.  (Doc. No. 18-3, p. 4).  If the user clicks on North America or the United States, the Site lists Zefal USA as the distributor.  (Doc. No. 18-3, p. 5-6).

Additionally, products made by Zefal France that are featured on the Site and which are available for purchase can be purchased online from the website, www.xxcycle.com ("xxcycle website").  (Glotin declaration, ¶ 8, 13).  The Site contains a link to the xxcycle website.  (Doc. No. 36-2, p. 18).  However, the xxcycle website is not owned, operated, or maintained by Zefal France.  (Glotin declaration, ¶ 9).  Products bearing the marks of Plaintiff were featured on the Site, but they were not available for purchase on the Site, nor were they available for purchase on the xxcycle website.  (Glotin declaration, ¶ 7, 10-12).

Zefal France does not maintain an office or facilities in the State of Florida.  (Glotin declaration, ¶ 26).  Furthermore, Zefal France does not: (1) have a telephone listing or a post office box in Florida, (2) have employees in Florida, (3) maintain inventory in Florida, (4) own or rent property in Florida, or (5) maintain a bank account in Florida.  (Glotin declaration, ¶ 27-31).

Since March 3, 2005, products made by Zefal France have been available in the United States for purchase through J & B Importers, which is a business located in Miami, Florida.  (Glotin declaration, ¶ 34).  However, products made by Zefal France bearing Plaintiff's marks

4

are not sold to J & B Importers, nor are they available for purchase from J & B Importers.
(Glotin declaration, ¶ 21, 35).  J & B Importers does not have a distributor agreement with Zefal
France, and Zefal France does not receive any commission on any products sold by J & B
Importers.  (Gurdjian[3] depo, p. 24, 34).

## IV.  Motion to Dismiss for Lack of Personal Jurisdiction

Zefal France argues that the Court cannot exercise personal jurisdiction over it.  An
assessment of personal jurisdiction consists of a two-part analysis.  See Madara, 916 F.2d at
1514 (citations omitted).  First, this Court must determine whether there is a basis for personal
jurisdiction over Zefal France under the forum's long-arm statute.  See id. (citations omitted).
Second, the Court must determine whether Zefal France has sufficient minimum contacts with
the forum to satisfy the Due Process clause such that maintenance of the suit in the forum would
not offend traditional notions of fair play and substantial justice.  See id. (citations omitted).

Plaintiff argues that it is proper for the Court to exercise personal jurisdiction over Zefal
France, because: (1) the Court can exercise specific jurisdiction over Zefal France due to Zefal
France selling merchandise to J & B Importers in Florida; and (2) the Court can exercise specific
personal jurisdiction over Zefal France under Federal Rule of Civil Procedure 4(k)(2) due to
Zefal France's website and its contacts with the United States.  For the reasons stated below, the
Court rejects Plaintiff's arguments.

## A.  Specific Jurisdiction Based on Sales to J & B Importers

---

[3]Plaintiff filed the deposition of Jacques Gurdjian, the vice president of J & B Importers, in response to Zefal France's motion.  (Doc. No. 36-2).

Plaintiff first argues that the Court can exercise specific jurisdiction over Zefal France due to Zefal France selling merchandise to J & B Importers in Florida.  In order to determine whether the Court can exercise personal jurisdiction over Zefal France, the Court must find that both the Florida long-arm statute and the due process inquiries are satisfied.

Plaintiff states in its complaint that the basis for personal jurisdiction over Zefal France under Florida's long-arm statute is that Zefal France committed tortious acts causing injury within Florida by infringing on Plaintiff's trademark.[4]  It appears that Florida's long-arm statute is satisfied, since Plaintiff is a Florida corporation, and as such, it would suffer injury in Florida.  See JB Oxford Holdings, Inc. v. Net Trade, Inc., 76 F. Supp.2d 1363, 1366 (S.D. Fla. 1999).

However, Plaintiff has not shown that it can satisfy the due process inquiry.  Specifically, the due process inquiry is a two-prong test: First, Plaintiff must show that Zefal France has established minimum contacts with Florida.  See Madara, 916 F.2d at 1515-16.  Second, Plaintiff must show that the exercise of personal jurisdiction over Zefal France would not offend traditional notions of fair play and substantial justice.  See id. at 1516 (citations omitted).

The minimum contacts inquiry is based on the principle that in order for a forum "to assert specific personal jurisdiction over a non-resident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign."  Id. at 1516 (citations omitted).  "This fair warning requirement is satisfied if the defendant has 'purposefully directed' his activities at the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Id. (internal and external

---

[4]Florida Statute § 48.193 contains Florida's long-arm statute.  Florida Statute § 48.193(1)(b) provides for jurisdiction over a defendant who commits a tortious act within Florida.

citations omitted).

Plaintiff cannot satisfy the minimum contacts inquiry based on Zefal France's sales to J & B Importers. Zefal France submitted the affidavit of Joel Glotin, Zefal France's Managing Director, who stated that products made by Zefal France bearing Plaintiff's marks were only sold to Zefal USA and not to any other entity, including J & B Importers. (Glotin declaration, ¶ 20-22, 35). Plaintiff has not submitted any evidence to contradict this showing. As such, since Plaintiff has not submitted any evidence that this litigation results from alleged injuries that arise out of or relate to Zefal France's sales of its products to J & B Importers, the Court finds that Plaintiff has not shown that this Court can exercise specific jurisdiction over Zefal France based on its sales to J & B Importers. See Abramson v. The Walt Disney Corporation, 132 Fed. Appx. 273, 276 (11th Cir. 2005)(stating that once the defendant submits affidavit evidence to refute personal jurisdiction, the burden shifts to the plaintiff to produce sworn testimony in support of jurisdiction); Williams Electric Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988)(citations omitted)(stating that specific jurisdiction derives from a defendant's contacts with the forum that are related to the cause of action).

**B. Personal Jurisdiction Under Rule 4(k)(2)**

Next, Plaintiff argues that the Court can exercise specific personal jurisdiction over Zefal France under Federal Rule of Civil Procedure 4(k)(2) due to Zefal France's website and its contacts with the United States.[5] Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction

_____

[5]The Court notes that Plaintiff did not raise this basis for jurisdiction in the complaint.

> over the person of any defendant who is not subject to the jurisdiction of the
> courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2).  Furthermore, the Advisory Committee Notes to the 1993 amendments to

Rule 4 provide:

> [Rule 4(k)(2)] corrects a gap in the enforcement of federal law. Under the former
> rule, a problem was presented when the defendant was a non-resident of the
> United States having contacts with the United States sufficient to justify the
> application of United States law and to satisfy federal standards of forum
> selection, but having insufficient contact with any single state to support
> jurisdiction under state long-arm legislation or meet the requirements of the
> Fourteenth Amendment limitation on state court territorial jurisdiction. In such
> cases, the defendant was shielded from the enforcement of federal law by the
> fortuity of a favorable limitation on the power of state courts, which was
> incorporated into the federal practice by the former rule.

Thus, Rule 4(k)(2) acts as a sort of federal long-arm statute and "sanctions personal

jurisdiction over foreign defendants for claims arising *under federal law* when the defendant has

sufficient contacts with the nation as a whole to justify the imposition of United States law but

without sufficient contacts to satisfy the due process concerns of the long-arm statute of any

particular state."  Sunshine Distribution, Inc. v. The Sports Authority Michigan, Inc., 157 F.

Supp.2d 779, 788 (E.D. Mich. 2001)(citations omitted)(emphasis in original).  "Under Rule

4(k)(2), "the constitutional requirements are the same as with any other personal jurisdiction

inquiry, *i.e.* relatedness, purposeful availment, and reasonableness, only in reference to the

United States as a whole, rather than a particular state."  Id. (citations omitted).

In order for Rule 4(k)(2) to apply, three elements must be satisfied: "(1) the plaintiff's

claim must be one arising under federal law; (2) the putative defendant must be beyond the

jurisdictional reach of any state court of general jurisdiction; and (3) the federal courts' exercise

of personal jurisdiction over the defendant must not offend the Constitution or other federal

law." Id. (internal quotation marks and citation omitted).  The first element is satisfied in the

instant case, since the claims asserted against Zefal France arise under federal law, i.e., the

Lanham Act.

Plaintiff argues that the Court can exercise personal jurisdiction over Zefal France due to

its website and its other contacts with the United States.  In Zippo Manufacturing Co. v. Zippo

Dot Com, Inc., 952 F. Supp. 1119 (W.D. Penn 1997), the court discussed the effect of a

defendant's website on personal jurisdiction analysis:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is
> directly proportionate to the nature and quality of commercial activity that an
> entity conducts over the Internet.  This sliding scale is consistent with well
> developed personal jurisdiction principles.  At one end of the spectrum are
> situations where a defendant clearly does business over the Internet.  If the
> defendant enters into contracts with residents of a foreign jurisdiction that involve
> the knowing and repeated transmission of computer files over the Internet,
> personal jurisdiction is proper.  At the opposite end are situations where a
> defendant has simply posted information on an Internet Web site which is
> accessible to users in foreign jurisdictions.  A passive Web site that does little
> more than make information available to those who are interested in it is not
> grounds for the exercise personal jurisdiction.  The middle ground is occupied by
> interactive Web sites where a user can exchange information with the host
> computer.  In these cases, the exercise of jurisdiction is determined by examining
> the level of interactivity and commercial nature of the exchange of information
> that occurs on the Web site.

Id. at 1124 (internal and external citations omitted).

Thus, the publication of a web page, without more, is not an act by which a defendant

purposefully avails itself of the forum.  See Sports Authority Michigan, Inc. v. Justballs, Inc., 97

F. Supp.2d 806, 813 (E.D. Mich. 2000)(citation omitted).  The issue is whether Zefal France

purposefully availed itself of the forum through its website.

In the instant case, the only exchange of information between the user and the host

computer that can occur is when a user chooses to submit a message to Zefal France through the

9

Site.[6]  At best, the Site falls within the middle ground.  However, after examining the level of interactivity and commercial nature of the exchange of information that occurs on the Site, and based on the relevant case law, the Court finds that the Site alone is not sufficient to confer personal jurisdiction.

The instant case is similar to Mink v. AAAA Development LLC, 190 F.3d 333, 336-37 (5th Cir. 1999).  In Mink, the court found that the defendant's website was insufficient to subject it to personal jurisdiction.  See id. at 336.  The website at issue in Mink had information about its products and services.  See id. 336-37.  Additionally, it provided users with a printable mail-in order form, its toll-free telephone number, a mailing address, and an e-mail address.  See id. at 337.  The defendant did not take orders through its website.  See id.  The Court found that the website was a passive website.  See id.  Furthermore, the court stated that the mere existence of an email link, without more, would not support personal jurisdiction.  See id. at 337 n.1.

Like the website in Mink, the website in the instant case had information about Zefal France's products and allowed users to send messages via the website.  Additionally, the website in the instant case, like in Mink, did not allow the user to purchase products from the website.

The case of Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997), is also instructive.  In Cybersell, the plaintiff alleged that the defendant committed trademark infringement through its website.  See id. at 415-16.  The website at issue in Cybersell contained a home page that informed users about the services the defendant offered.  See id. at 419.  The

---

[6]The Court notes that Plaintiff alleges in the complaint that items bearing Plaintiff's marks were sold on the Site.  However, Zefal France has submitted the affidavit of Joel Glotin, in which he states that products bearing the marks of Plaintiff were not available for purchase on the Site, nor were they available for purchase on the xxcycle website.  Plaintiff has not submitted any evidence to rebut this assertion.

interactivity of the defendant's website was limited to receiving the user's name and address and an indication that the user was interested in the defendant's service.  See id.  However, a user could not sign up for the defendant's service through the website.  See id.  The court characterized the defendant's website as "an essentially passive web page advertisement" and found that the defendant had not purposefully availed itself of the forum.  Id. at 419-20.  The court stated that "[o]therwise, every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located."  Id. at 420.

Likewise, the case of Amberson Holdings LLC v. Westside Story Newspaper, 110 F. Supp.2d 332 (D. N.J. 2000), is also instructive.  In Amberson, the plaintiff alleged that the defendants committed trademark infringement, in part, through their website.  See id. at 333. The website at issue in Amberson provided information about the defendants' company and provided the user with the option to contact the company via e-mail.  See id. at 337.  The website did not sell the defendants' products.  See id.  The court stated that it "refuse[d] to classify defendants' website as anything more than passive advertisement, which [was] not grounds for the exercise of personal jurisdiction."  Id.

Based on the above cases, it is clear that Zefal France's website alone is not sufficient to confer personal jurisdiction.[7]  Therefore, the Court must determine whether Zefal France has

---

[7]The fact that the website in the instant case has a link to another website (the xxcycle website) where the user can make purchases of Zefal France's products does not change the Court's conclusion, especially given the fact that products made by Zefal France bearing Plaintiffs marks could not be purchased on the xxcycle website.  See Novak v. Overture Services, Inc., 309 F. Supp.2d 446, 456 (E.D.N.Y. 2004)(finding that a website that did not sell any products was passive, and rejecting the argument that the website was interactive due to the website providing links to other websites that sold products).

sufficient contacts with the United States, in addition to its website, that would support personal jurisdiction.

Plaintiff contends that Zefal France has sufficient contacts with the United States due to its sales to J & B Importers and its sales to Zefal USA.  Zefal France's sales to J & B Importers are not relevant to a specific jurisdiction inquiry, since there is no evidence that Zefal France sold any products bearing Plaintiff's marks to J & B Importers.

Plaintiff also contends that Zefal France's sales to Zefal USA show that Zefal France purposely availed itself of the United States.[8]  However, the Court need not consider Zefal France's contact with the United States, since Plaintiff has not shown that Zefal France is beyond the jurisdictional reach of any state.  Specifically, the Court notes that Plaintiff has not shown that Zefal France is beyond the jurisdictional reach of Texas.  Texas's long-arm statute has been interpreted to extend to the limits of due process, and therefore, Zefal France would be subject to

---

[8]Plaintiff cites cases in support of its contention that the fact that Zefal France sold its products fob France is not dispositive.  See Hewlett-Packard Co. v. ICL Network Solutions (HK), Ltd, 2005 WL 3728713, at *5 (D. Mass. Nov. 29, 2005); Benitez-Allende v. Alcan Aluminio do Brasil, S.A., 857 F.2d 26, 29-30 (1st Cir. 1988)(finding jurisdiction permissible even though the defendant sold its product with title passing in Brazil, because the defendant took active steps to sell its product in Puerto Rico by contracting with someone in Puerto Rico to solicit orders for the products, which were sent to Brazil; and the defendant deliberately marketed the product in Puerto Rico and knew and intended that the product would end up in Puerto Rico); Cambridge Literary Properties v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63-64 (1st Cir. 2002)(stating that the shipment of large quantities of goods into a state, even f.o.b, can satisfy the minimum contacts prong of the due process inquiry); Keds Corp. v. Renee International Trading Corp., 888 F.2d 215, 218-19 (1st Cir. 1989)(finding purposeful availment of Massachusetts, even though the defendant sold its product with title passing in New York; the court considered the fact that the defendant called a distributor in Massachusetts to encourage it to purchase and sell the defendants products in Massachusetts); see also Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1548 (11th Cir. 1993)(stating that the fact that title to the product passed in France did not determine the degree of contacts between the defendant and the United States); Classic Weavers Ltd. v. Couristan, Inc., 1996 WL 786805, at *5 (N.D. Ga. Oct. 16, 1996).

suit in Texas if such is consistent with the Due Process Clause of the Fourteenth Amendment.
See Mink, 190 F.3d at 335 (citations omitted).

It appears that Zefal France may be subject to personal jurisdiction in Texas, since: (1)
Zefal France targeted the American market through its website, and (2) Zefal USA, a Texas
corporation, was the exclusive distributor of products bearing Plaintiff's marks that were made
by Zefal France.  See Sunshine Distribution,[9] 157 F. Supp.2d at 789; Classic Weavers, 1996 WL
786805, at *5 (stating that "[w]hen an alien defendant introduces its product into the United
States' stream of commerce through an agreement with an exclusive distributor in the forum
State, the alien defendant purposefully directs activities at the forum State); Keds Corp., 888
F.2d at 219-20.  Since Plaintiff has not shown that Zefal France is beyond the jurisdictional reach
of Texas, the Court finds that Plaintiff has not satisfied the requirements of Rule 4(k)(2).
Therefore, the Court finds that Plaintiff has not shown that this Court can exercise specific
personal jurisdiction over Zefal France.

**V.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Zefal S.A.'s Special Appearance to Request the Court to Refuse to Exercise

        Personal Jurisdiction (Doc. No. 17) is **GRANTED**.  The Court hereby dismisses

---

[9]The Court notes that Sunshine Distribution found jurisdiction proper under Rule 4(k)(2)
rather than finding that a specific state could exercise jurisdiction over the defendant.  However,
in that case, the exclusive distributor was located in California, and personal jurisdiction was
previously argued to exist in California during a California action, but the California court found
that it did not have personal jurisdiction.  157 F. Supp.2d at 788-89.  Therefore, when the case
was filed in the Eastern District of Michigan, the court found that since the defendant was not
subject to jurisdiction in California or any other state, it would consider the defendant's contacts
with the United States.  See id.  In the instant case, there has not been a showing that Texas
would not exercise personal jurisdiction over Zefal France.

Plaintiff's claims against Defendant Zefal Corporation, since that entity does not exist and the Court cannot exercise specific personal jurisdiction over Zefal France.

(2)    Plaintiff's claims remain against Defendant Zefal, Inc.  A default was entered against Zefal, Inc. on February 16, 2006, and Plaintiff has not moved for default judgment against Zefal, Inc.  Plaintiff is directed to move for default judgment against Zefal, Inc. by May 17, 2006, or the Court will dismiss Plaintiff's claims against Zefal, Inc. for lack of prosecution.

**DONE AND ORDERED** at Tampa, Florida, this 18th day of April, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

14