UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WORLD TRIATHLON CORPORATION,

    Plaintiff,

v.                                                               Case No. 8:05-cv-659-T-24 MAP

ZEFAL, INC. and ZEFAL CORPORATION,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiff's Motion for Default Judgment Against Zefal, Inc. (Doc. No. 41).

**I. Background**

Plaintiff World Triathlon Corporation alleges the following in its complaint: Plaintiff, a Florida corporation, is in the business of organizing and promoting triathlon competitions worldwide. (Doc. No. 1, ¶ 1, 8). Plaintiff is also in the business of licensing its internationally famous IRONMAN TRIATHLON and IRONMAN marks in connection with the sale of athletic products. (Doc. No. 1, ¶ 8).

Defendant Zefal, Inc. is a Texas corporation. (Doc. No. 1, ¶ 2). On or about May 5, 2003, Plaintiff and Zefal, Inc. entered into a license agreement wherein they agreed that Plaintiff would grant an exclusive license to Zefal, Inc. to use Plaintiff's IRONMAN marks on bicycle equipment on a worldwide basis. (Doc. No. 1, ¶ 16). In return, Zefal, Inc. agreed to develop, promote, and market the licensed products and pay Plaintiff certain royalties and sponsorship fees. (Doc. No. 1, ¶ 16). The term of the license agreement was through December 31, 2007, unless terminated sooner pursuant to the provisions of the agreement. (Doc. No. 1, Ex. A, ¶

2(e)).

Pursuant to the license agreement, Zefal, Inc. agreed to make guaranteed minimum payments to Plaintiff under the contract as follows:

- $6,250 due October 1, 2003
- $8,750 due January 1, 2004
- $8,750 due April 1, 2004
- $8,750 due July 1, 2004
- $8,750 due October 1, 2004
- $10,000 due January 1, 2005
- $10,000 due April 1, 2005
- $10,000 due July 1, 2005
- $10,000 due October 1, 2005
- $12,500 due January 1, 2006
- $12,500 due April 1, 2006
- $12,500 due July 1, 2006
- $12,500 due October 1, 2006
- $12,500 due January 1, 2007
- $12,500 due April 1, 2007
- $12,500 due July 1, 2007
- $12,500 due October 1, 2007

(Doc. No. 1, Ex. A, ¶3(c)). Thus, the total guaranteed minimum payments contemplated if the license agreement lasted until December 31, 2007 equaled $181,250.

The license agreement provided that Plaintiff could terminate the license agreement if Zefal, Inc. failed to make any payment due under the license agreement and such default continued for thirty days after written notice of the default. (Doc. No. 1, Ex. A, ¶ 8(a)). The license agreement also provided that the guaranteed minimum payment for the quarter during which termination occurs shall become immediately due and payable upon termination of the agreement. (Doc. No. 1, Ex. A, ¶ 8(b)).

Plaintiff contends that Zefal, Inc. only paid $5,000 towards the $6,250 that was due on October 1, 2003 and then made no further payments. (Doc. No. 1, ¶ 17; Doc. No. 1, Ex. B).

Therefore, by a letter dated March 2, 2005, Plaintiff gave written notice to Zefal, Inc. that it was terminating their license agreement. (Doc. No. 1, ¶ 19; Doc. No. 1, Ex. C). However, after the termination of the license agreement, Zefal, Inc. continued to market, advertise, and offer for sale products bearing the IRONMAN mark and logo. (Doc. No. 1, ¶ 29).

On April 4, 2005, Plaintiff filed suit against Zefal, Inc. asserting three claims: (1) breach of license agreement, (2) trademark infringement under 15 U.S.C. §§ 1114-1118, and (3) false designation of origin under 15 U.S.C. § 1125(a). Zefal, Inc. filed an answer to the complaint on June 2, 2005. (Doc. No. 8). Thereafter, Zefal, Inc.'s attorneys withdrew, and the Court instructed Zefal, Inc. to obtain new counsel within thirty days. (Doc. No. 27). Zefal, Inc. did not obtain new counsel, so Plaintiff moved for entry of default against Zefal, Inc. (Doc. No. 32). The Court granted the motion, and the Clerk entered default on February 16, 2006. (Doc. No. 34, 35). Plaintiff now moves for default judgment.

## II.  Motion for Default Judgment

In its motion for default judgment, Plaintiff seeks the following: (1) $176,250 in damages, (2) $7,621.88 in prejudgement interest, (3) $4,875 in attorneys' fees and costs, and (4) a permanent injunction. However, as explained below, Plaintiff must submit additional legal authority and explanations before the Court can grant the requested relief.

### A.  Damages

Plaintiff seeks $176,250 in damages for the breach of the license agreement, as that represents the amount of money that Zefal, Inc. would have paid Plaintiff if there were no breach and Plaintiff did not terminate the agreement early.[1]  Since the license agreement was terminated

---

[1] $181,250 less the $5,000 due on October 1, 2003 that Zefal, Inc. paid Plaintiff.

3

on March 2, 2005, there is no question that Zefal, Inc. owed Plaintiff the guaranteed minimum payments through April 1, 2005, which equaled $56,250.[2] However, Plaintiff has not shown that it is entitled to the guaranteed minimum payments for periods after the license agreement was terminated. Therefore, if Plaintiff wants to pursue such damages, Plaintiff must submit case law to the Court showing that it is entitled to an award of damages for the guaranteed minimum payments for periods after the license agreement was terminated.

### B. Prejudgment Interest

Plaintiff seeks $7,621.88 in prejudgement interest. However, Plaintiff fails to set forth how this figure is calculated. Therefore, if Plaintiff wants to be awarded prejudgment interest, it must submit to the Court the calculation for such an award.

### C. Injunction

Plaintiff also requests an injunction for Zefal, Inc.'s trademark infringement and false designation of origin. Plaintiff requests that the injunction containing the following language:

> A permanent injunction is hereby entered in favor of Plaintiff World Triathlon Corporation and against Defendant, Zefal, Inc., its respective agents, servants, employees, officers, successors, licensees and assigns and all persons acting in concert or participation with them, to (a) cease and desist any present or future use of any marks that are confusingly similar to WTC's federally-registered trademarks; (b) destroy all merchandise bearing WTC's federally-registered trademarks; and (c) file with this Court and serve on Plaintiff within thirty (30) days after entry of this Order a report in writing under oath setting forth in detail the manner and form of compliance herewith.

Pursuant to 15 U.S.C. § 1116(a), the Court may grant an injunction, according to the principles of equity and upon such terms as the Court deems reasonable, in order to prevent

---

[2] $1,250 due October 1, 2003; $35,000 due in 2004, and $20,000 due through April 1, 2005.

trademark infringement or to prevent a false designation of origin. When determining whether to award injunctive relief, the Court should determine whether the injunction is necessary as a matter of equity in order to prevent threatened future infringements. See Coca-Cola Co. v. Howard Johnson Co., 386 F. Supp. 330, 338 (N.D. Ga. 1974)(citations omitted). However, an injunction should not be granted if the infringement has been effectively discontinued. See id. at 339 (citation omitted).

It is unclear as to whether an injunction is necessary in this case, because it is unclear as to whether Zefal, Inc. still exists. Specifically, Jacques Gurdjian stated in his deposition that Zefal, Inc. closed its warehouse in Texas and no longer shipped products to J & B Importers. (Doc. No. 36, Gurdjian depo., p. 18-19). Therefore, Plaintiff is directed to inform the Court whether Zefal, Inc. is still operating and explain why an injunction is necessary in this case.

**III. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff must submit the additional legal authority and explanations outlined above by June 2, 2006.[3]

**DONE AND ORDERED** at Tampa, Florida, this 24th day of May, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record

---

[3] No additional submissions are required regarding attorneys' fees and costs.